107 F.3d 17
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PEOPLE OF the STATE OF CALIFORNIA, Plaintiff-Appellant,
v.
H & H SHIP SERVICE COMPANY, a California Corporation dba H &
H Environmental Services, Defendant-Appellee.
 No. 96-10164.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 10, 1996.
Decided Jan. 27, 1997.
 
 Before: FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The People of the State of California ("the People") appeal the district court's decision not to order H & H Ship Service Company ("H & H") to pay restitution as a condition of H & H's probation for violating California Fish & Game Code section 5650(f). The People argue that restitution is mandatory under California law and must be imposed as a condition of H & H's probation. The People further argue that the district court should have held H & H jointly and severally liable for restitution of the full value of clams destroyed in the incident underlying H & H's conviction. We agree, and therefore reverse and remand for the district court to determine H & H's restitution obligation under California law.
 
 I. BACKGROUND
 
 3
 In July 1992, An-Fo Manufacturing Company ("An-Fo") caused an accidental spill of phosphoric acid into the Oakland Estuary. An-Fo hired H & H to clean up the spill pursuant to a plan agreed on by An-Fo, various state agencies, and the U.S. Coast Guard. H & H neutralized the acid with soda and diluted it with water from fire hydrants. During the clean-up process, H & H removed a sand bag barricade, causing the area to be "flushed" and sending water contaminated with phosphoric acid into the Estuary. H & H's acts contributed to damage of the Estuary's fish, plant life, and bird life.
 
 
 4
 The People filed a complaint in the Oakland-Piedmont-Emeryville District municipal court against H & H, H & H's on-site supervisor Jeffery Lucas, and An-Fo. Against H & H and Lucas, the complaint alleged misdemeanor violations of California Fish & Game Code section 5650[1] and California Water Code section 13376.[2] The Water Code charge subsequently was dropped.
 
 
 5
 H & H removed the case to federal court under 28 U.S.C. § 1442(a)(1), based on the assertion that the Coast Guard authorized H & H's actions.[3] After a bench trial, District Judge Schnacke convicted H & H of one count of violating California Fish & Game Code section 5650(f). He found that H & H's acts had "extended and prolonged" the damage to the Estuary. Judge Schnacke sentenced H & H to three years probation, a fine of $900.00, two restitution awards totalling almost $6,000.00 for time spent by state and county employees investigating the release and preparing for trial, and, as restitution for natural resources damage, $54,405.00 to be paid to the California Fish and Game Preservation Fund.[4] Lucas was acquitted. Before the case was removed, An-Fo settled the complaint against it for $10,000.00 in costs and penalties.
 
 
 6
 H & H appealed its conviction and sentence. This court affirmed H & H's conviction but reversed the restitution awards. People of the State of California v. H & H Ship Serv. Co., 1995 WL 619293 (9th Cir. Oct. 17, 1995). The court reversed outright the two costs-of-prosecution awards. The court then found that restitution for natural resources damage was proper and that the state was a victim of the crime to whom restitution must be made, but that the district court had erroneously imposed restitution on H & H for the full value of all clams killed in the spill. Id. The court therefore reversed the $54,405.00 restitution award for natural resources damage and remanded the case for the district court to determine "the value of the clams for whose destruction H & H was liable." Id.
 
 
 7
 On remand, the case was reassigned to Judge Walker. After briefing by both H & H and the People seeking to establish the value of clams destroyed by H & H, Judge Walker held a hearing. The People conceded that there had been no trial testimony about "any particular clams being damaged by [H & H]." The People argued, however, that because Judge Schnacke had found H & H responsible for extending and prolonging the natural resources damage, H & H should be jointly and severally liable for the total amount of that damage. The People suggested that the Ninth Circuit panel which heard H & H's appeal was not aware that the damage could not be apportioned, since H & H, the appellant, had not raised that issue and the People thus had no reason to raise it either.[5]
 
 
 8
 Judge Walker rejected the People's argument that H & H could be jointly and severally liable for the destroyed clams. He then found that the record did not provide a sufficient basis for determining the value of the clams for whose destruction H & H was responsible. Judge Walker therefore concluded that because he lacked "the predicate factual determination necessary for a restitution order," no restitution order was appropriate.
 
 
 9
 The district court entered judgment as "the prior judgment as affirmed by the United States Court of Appeals for the Ninth Circuit." The People now appeal from that judgment.
 
 II. STANDARD OF REVIEW
 
 10
 We review a restitution order for an abuse of discretion, provided the order falls within the bounds of the statutory framework. United States v. Pappadopoulos, 64 F.3d 522, 530 (9th Cir.1995). However, we must review de novo the legality of a sentence, including a restitution order. United States v. Reed, 80 F.3d 1419, 1421 (9th Cir.), cert. denied, 117 S.Ct. 211 (1996); United States v. Dayea, 73 F.3d 229, 230 (9th Cir.1995).
 
 
 11
 Under California law, which controls this case, a trial court has broad discretion to tailor an appropriate restitution order. See In re S.S., 37 Cal.App.4th 543, 550, 43 Cal.Rptr.2d 768, 773 (Cal.Ct.App.1995). The trial court's order "must be sustained unless it constitutes an abuse of discretion or rests upon a demonstrable error of law." Id.
 
 III. DISCUSSION
 
 12
 A. Restitution is mandatory under California law
 
 
 13
 Article 1, section 28, of the California Constitution provides that every person convicted of a crime must pay restitution to the victim of that crime.[6] The statute implementing this provision requires that the court order any person convicted of a crime to pay restitution to the victim, if any, for economic loss. Cal.Pen.Code § 1202.4.[7] It expressly authorizes the payment of restitution to government entities. Id. § 1202.4(p). This court, affirming H & H's conviction, found that the state was a victim of H & H's actions because the state had dominion over the damaged clams and those clams were state property. The assessment that valued the lost clams at $54,405.00 characterized the loss as "economic damage." Economic loss for which restitution is available includes the replacement value of damaged property. Cal.Pen.Code § 1202.4(g)(1). Accordingly, the district court was required to impose a restitution obligation on H & H as a condition of H & H's probation.
 
 
 14
 H & H argues that because it is insolvent and has ceased operations, the restitution issue is moot. However, section 1202.4 expressly provides that a restitution fine must be ordered regardless of the defendant's ability to pay. Cal.Pen.Code § 1202.4(c). Section 1202.4 also provides that the court must order "full restitution" for economic loss "unless it finds clear and compelling reasons for not doing so, and states them on the record." Id. § 1202.4(g).
 
 
 15
 Because H & H was convicted of a crime and the state suffered economic loss as a victim of that crime, the district court did not have discretion to impose no restitution on H & H. Also, while the district court found that it could not determine the amount of loss for which H & H was responsible, it did not state compelling reasons for eliminating the restitution order altogether from H & H's probation conditions.
 
 
 16
 Moreover, because both the trial judge and the Ninth Circuit already had established that H & H was liable for at least some natural resources damage, the district court departed from the law of the case in finding that H & H was not liable for any such damage. A court may depart from the law of the case only where the first decision was clearly erroneous, an intervening change in the law has occurred, the evidence on remand is substantially different, changed circumstances exist, or a manifest injustice otherwise would result. Thomas v. Bible, 983 F.2d 152, 155 (9th Cir.), cert. denied, 508 U.S. 951 (1993). None of these conditions existed here. The district court therefore abused its discretion in departing from the law of the case to impose no restitution order on H & H for natural resources damage.
 
 B. Joint and several liability
 
 17
 The People argue that, under California law, H & H may be held jointly and severally liable for the full value of the damaged clams. The People suggest that this court, in reversing H & H's restitution order, did not consider whether H & H might be jointly and severally liable because H & H had not raised on appeal the issue of apportioning liability. The People did argue for joint and several liability in a sentencing memorandum submitted to Judge Schnacke.[8] In that memorandum, the People first argued that the state expert's calculation of $54,405.00 for natural resources damage should provide the basis for H & H's restitution obligation. The People then argued that a California restitution award imposes joint and several liability on the defendant. The People noted that although the damage in question was not divisible, expert testimony indicated that most of the natural resources damage resulted from H & H's actions.
 
 
 18
 At H & H's sentencing hearing, the parties discussed the fact that no one had testified regarding which clams were killed by H & H. H & H argued that imposing the full cost of the damaged clams on H & H was inequitable. Judge Schnacke stated that "the only evidence that we had of any flushing activity that would have sent the materials out over a broad area was the flushing that was caused when the sandbags were removed [by H & H]." Judge Schnacke also stated that he was convinced that H & H's actions had substantially damaged the estuarine habitat, even if the precise amount of that damage could not be determined. Neither the judge nor the parties discussed joint and several liability at the sentencing hearing. Judge Schnacke ordered restitution in the amount of $54,405.00, reflecting the total value of the destroyed clams.
 
 
 19
 Before Judge Walker, the People argued that this court had remanded the case for a determination of the natural resources damage for which H & H was liable, not the amount of damage actually caused by H & H. The People explained that under California law, a probationer may be jointly and severally liable for a restitution order.
 
 
 20
 Although Judge Walker acknowledged that liability and causation were not necessarily synonymous, he declined to apply joint and several liability to H & H. Judge Walker noted that joint and several liability applies mainly to civil, not criminal, liability. Finally, after stating that the Ninth Circuit had issued "a direction for the District Court to scrutinize the record to determine the value of the clams for which liability--criminal liability of H & H can be established," he concluded that the People had failed to establish any such liability.
 
 
 21
 In reaching this conclusion, however, Judge Walker overlooked the applicable California case law. Several California courts of appeal have held that a defendant may be jointly and severally liable for a restitution award. E.g., In re S.S., 37 Cal.App.4th at 549-50, 43 Cal.Rptr.2d at 773; People v. Arnold, 27 Cal.App.4th 1096, 1098-99, 33 Cal.Rptr.2d 35, 37-38 (Cal.Ct.App.1994); People v. Campbell, 21 Cal.App.4th 825, 833, 26 Cal.Rptr.2d 433, 438 (Cal.Ct.App.1994); People v. Zito, 8 Cal.App.4th 736, 744, 10 Cal.Rptr.2d 491, 495 (Cal.Ct.App.1992).
 
 
 22
 In the single contrary case, which was the first California case to consider the question, the court expressed concern that joint and several liability as a probation condition effectively imposed civil liability on a criminal defendant without civil due process and that joint and several restitution orders might be "void for vagueness." People v. Hernandez, 226 Cal.App.3d 1374, 1380, 277 Cal.Rptr. 444, 447 (Cal.Ct.App.1991).
 
 
 23
 In Zito, the court criticized Hernandez and allowed a joint and several restitution order. 8 Cal.App.4th at 744, 10 Cal.Rptr.2d at 495. Zito pointed out that the legislature had acknowledged the relationship between joint and several liability and civil liability by authorizing the enforcement of restitution orders as civil judgments. Id. at 746, 10 Cal.Rptr.2d at 496; see Cal.Gov't Code 13967(c); Cal.Pen.Code § 1202.4(h). Also, defendants ordered to pay restitution are entitled to contest the amount imposed. Zito, 8 Cal.App.4th at 746, 10 Cal.Rptr.2d at 496; see Cal.Pen.Code § 1202.4(j). Finally, the Zito court rejected the notion that a joint and several restitution award would be void for vagueness because a defendant would not know the full extent of his liability relative to that of his codefendants. To the contrary, the court explained that each defendant was liable for the full amount of restitution and that each defendant was entitled to credit for payments made by another jointly liable defendant. 8 Cal.App.4th at 745-46, 10 Cal.Rptr.2d at 496.
 
 
 24
 Zito involved a direct victim restitution order under California Government Code section 13967. In Campbell, the court relied on Zito 's reasoning to uphold a joint and several restitution order imposed as a probation condition. 21 Cal.App.4th at 834, 26 Cal.Rptr.2d at 439.
 
 
 25
 H & H argues that it may not be held jointly and severally liable because it is the sole defendant in the instant case. Lucas was acquitted; An-Fo settled the complaint against it before removal and was never subjected to the district court's jurisdiction. We reject this argument. The doctrine of joint and several liability exists to ensure that victims of crime or tort are fully compensated, even if not every wrongdoer contributes her share of the liability. In the civil context, California retained joint and several liability for concurrent tortfeasors when it adopted a comparative negligence system. American Motorcycle Ass'n v. Superior Court, 578 P.2d 899, 20 Cal.3d 578 (1978). The American Motorcycle court explained that where more than one wrongdoer contributes to cause an indivisible injury, "a defendant has no equitable claim vis a vis an injured plaintiff to be relieved of liability ... simply because some other tortfeasor's negligence may also have caused the same harm." Id. at 905, 20 Cal.3d at 589. This conception of joint and several liability appears unrelated to whether a co-tortfeasor also is a defendant in the action in question or even in a separate action before the same court.
 
 
 26
 Likewise, a joint and several restitution obligation imposed on a "solo" criminal defendant seems appropriate. In People v. Flores, 197 Cal.App.2d 611, 616, 17 Cal.Rptr. 382 (Cal.Ct.App.1961), the court upheld a joint and several restitution order as a probation condition because "[w]here two or more persons act in concert, it is well settled both in criminal and civil cases that each will be liable for the entire result." Here, H & H and An-Fo arguably did not act "in concert." However, their combined actions led to the natural resources destruction for which Judge Schnacke ordered restitution. Had Judge Schnacke considered whether H & H was jointly and severally liable for the resource damage, the record would have supported an affirmative conclusion.
 
 
 27
 Judge Walker's task on remand was to determine, on the basis of the trial record, the extent of H & H's liability for destroyed clams. California law supports imposing joint and several liability on H & H. The People's argument to that effect appears in the record in the sentencing memorandum and was briefed by the People to Judge Walker. Upon determining that the damage could not be apportioned, Judge Walker should have found H & H jointly and severally liable and calculated H & H's restitution obligation accordingly.
 
 IV. CONCLUSION
 
 28
 The district court did not have discretion to eliminate restitution from H & H's probation conditions and it abused its discretion in departing from the law of the case to find H & H not liable for natural resources damage. Under California law, H & H may be held jointly and severally liable for the total value of the destroyed clams. We therefore REVERSE the district court's judgment and REMAND the case to the district court to enter an appropriate restitution order.[9]
 
 
 29
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 5650 provides in relevant part:
 It is unlawful to deposit in, permit to pass into, or place where it can pass into the waters of this State
 * * *
 (f) Any substance or material deleterious to fish, plant life, or bird life.
 
 
 [2]
 Section 13376 prohibits the discharge of pollutants into the waters of the state without a permit
 
 
 [3]
 The federal officer removal statute provides that a state criminal prosecution may be removed to federal district court if the defendant is "[a]ny officer of the United States or any agency thereof, or persons acting under him, for any act under color of such office...." 28 U.S.C. § 1442(a)(1). Although the Coast Guard's authorization of H & H's actions was later disproved, this court found jurisdiction proper in its earlier review of H & H's conviction and sentence
 
 
 [4]
 This amount reflected the replacement value of clams killed by the spill, calculated by a California Department of Fish and Game Water Quality Biologist
 
 
 [5]
 H & H did not raise the issue of apportionment in its appeal, although the People's answering brief did make a passing reference, in a footnote, to the applicability of joint and several liability. H & H did not address that issue in its reply brief. In their petition for rehearing and clarification, the People asked the Ninth Circuit to address the joint and several liability issue, but the panel denied the petition without comment
 
 
 [6]
 Article 1, section 28 provides:
 It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the person convicted of the crimes for the losses they suffer.
 Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary.
 
 
 [7]
 Section 1202.4 provides in relevant part:
 (a)(3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both of the following:
 (A) A restitution fine in accordance with subdivision (b).
 (B) Restitution to the victim or victims, if any, in accordance with subdivision (f).
 * * *
 (f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims.
 * * *
 (m) In every case in which the defendant is granted probation, the court shall make the payment of restitution fines and orders imposed pursuant to paragraph (3) of subdivision (a) a condition of probation.
 (emphasis added).
 
 
 [8]
 Because H & H did not raise on its first appeal appeal the issue of apportioning damages, the People's sentencing memorandum was not included in the excerpts of record submitted with that appeal
 
 
 [9]
 We note that California courts imposing joint and several restitution obligations generally reduce the defendant's liability to reflect any payments made to the victim by other wrongdoers. See In re S.S., 37 Cal.App.4th at 550, 43 Cal.Rptr.2d at 773; Zito, 8 Cal.App.4th at 745, 10 Cal.Rptr.2d at 496. On remand, the district court should determine whether H & H is entitled to an offset reflecting the amount of An-Fo's settlement