Filed 2/2/16  In re C.L. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C. L., a Person Coming Under the Juvenile Court Law. | C078593 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JV135484) |
| v. | |
| C. L., | |
| Defendant and Appellant. | |

In this proceeding under Welfare and Institutions Code[1] section 602, the minor, C. L., admitted hit-and-run and speeding allegations.  The juvenile court awarded restitution to two victims.  The minor contends insufficient evidence supported the restitution award to the second victim.  We affirm.

---

[1]    Undesignated statutory references are to this code.

1

FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 2013, the Sacramento County District Attorney filed a section 602 petition alleging that on or about April 16, 2013, the minor committed the offenses of hit-and-run, a misdemeanor; driving without a valid license, a misdemeanor; unlawfully failing to drive within a single lane, an infraction; and speeding, an infraction.

On June 4, 2014, the minor admitted the hit-and-run and speeding charges and the remaining counts were dismissed in the interest of justice. The juvenile court referred the matter to probation.

The probation report described the offenses as follows, based on the police report:

"On April 16, 2013, at approximately 0831 hours, a Sacramento Police officer responded to Florin Road and Serenity Drive to investigate a three vehicle collision in which one of the parties fled the scene.

"The officer arrived on scene and contacted Victim #1 (Anurita Devi). Devi's vehicle had moderate damage to its front bumper area. Devi indicated she was traveling eastbound on Florin Road in the #2 lane when a vehicle in front of her suddenly changed lanes and cut her off. Devi indicated she slammed on her brakes and stopped her vehicle attempting to avoid a collision. However, the vehicle behind her hit her vehicle, forcing Devi into the vehicle that cut her off. Devi stated the driver of the vehicle [who] cut her off, later identified as C[.] L[.] (subject), got out of her vehicle briefly and looked at the damage. The subject then got back into her vehicle and drove away.

"At approximately 0845 hours, the officer contacted Victim #2 (Joe Moua). Moua's vehicle had moderate damage to its front end area. In summary, Moua related he was driving east on Florin Road in the far right hand lane (#2 lane) at about 35 miles per hour. He indicated a tan car passed him on the left and then it cut in front of the white car that was in front of his vehicle. The tan car then slammed on the brakes. The car in front of Moua's vehicle hit the tan car and he struck the white car in front of him. Moua indicated he pulled over and the girl (subject) got out of the tan car. Moua informed the

2

officer that he told the subject to stay but she drove into Burbank High School's parking lot.

"Shortly thereafter, the officer located the subject at Luther Burbank High School. She was identified by School Administration. At the time, the subject did not have a valid California Driver's License. She did have valid proof of insurance. Additionally, the subject later identified herself as the driver of the vehicle during the time of the accident.

"In a statement to the officer, the subject indicated she was traveling eastbound on Florin Road in the #1 lane by the railroad tracks. She indicated she tried to change lanes into the #2 lane. The subject indicated the vehicle in front of her slammed on their brakes. She then thought she was going to hit the vehicle in front of her, so she stopped. At this time, the vehicle behind her hit her vehicle. She related she left the scene because she wanted to get her brother to school on time.

"Based on the facts, statements, and observations, it was the officer's opinion that the subject was at fault for the collision due to an unsafe lane change. The officer also cited the subject for driving without a license and hit-and-run property damage."

On June 25, 2014, the probation department recommended that the juvenile court award restitution to victim Devi in the amount of $2,568.02. Victim Moua had not yet completed and forwarded his statement of loss and supporting documentation; the department recommended awarding restitution to him in an amount to be determined.

At the disposition hearing on July 24, 2014, the juvenile court imposed probation, ordered restitution to victim Devi in the amount of $2,568.02, and ordered restitution to victim Moua in an amount to be determined.

On September 4, 2014, the probation department notified the juvenile court that Moua had submitted a restitution claim for $1,000, but did not have receipts and had not provided supporting documentation. However, the report also stated: "The

3

documentation has been provided to the District Attorney and Defense Counsel with this memorandum."[2] The department recommended awarding the amount claimed.

At a hearing on September 5, 2014, the minor's counsel stated that he was surprised by the new restitution memorandum because the prosecutor notified him in April 2014 that Moua had given the car away and had no repair estimate. However, when the juvenile court asked if counsel objected to ordering $1,000 in restitution, counsel replied: "There is a -- and attached, it's just -- it's not the actual receipts or anything, but it does look like it would be [a] generally valid amount for this kind of damage." Counsel submitted on the matter. The prosecutor agreed to the proposed order.

The juvenile court (Judge David De Alba presiding) stated that it had been prepared to terminate probation until it learned of the new restitution claim, but wanted to give the minor the opportunity to contest the claim. The minor's counsel requested a one-month continuance, noting that the minor was currently pregnant and about to deliver. The court set a restitution hearing date of October 3, 2014. The court then ordered $1,000 in restitution to Moua.[3] After numerous continuances, the hearing finally took place on January 13, 2015.

At the restitution hearing (Judge Alyson Lewis presiding), Moua testified that the accident caused by the minor damaged the front bumper, hood, frame, radiator, and lights of his 1994 Toyota Previa; the car had to be pushed home, and he had not been able to start it since then. He had not taken it in for repair or for an estimate because he did not

---

[2]    Whatever the report was referring to is not in the appellate record.

[3]    The juvenile court did not state that the order was tentative, and the minor's counsel did not object to the form of the order. It appears from subsequent proceedings, however, that the parties and the court agreed that the order was tentative in effect and subject to reconsideration should the minor choose to contest it. On appeal, neither party argues that the court was bound by this order.

4

have the money to repair it. He had never had to get a car repaired before and did not know how much auto repair shops charged; he just knew it would be expensive. He came up with an estimate of $1,000 because "there's a lot of damage to the car. The damage is pretty severe." Based on information he had found on Craigslist, he thought the car would be worth around $3,000 if sold for parts. Because he could not get the car registered without having the repairs done, he gave it to a friend to hold onto, saying that if the friend could get it fixed he could keep it. He did not know if the friend had done any repairs; he had not spoken to him since February 2014.

The minor's counsel argued that even assuming the minor was at fault, Moua's claim was not reasonable because there was no supporting documentation: $1,000 was "just a number he's pulling out of his head." Counsel also stated: "So I just don't think we have an appropriate narrowing down of what the value of this damage is either as to what the cost to repair it or how much it diminished the value of the vehicle if he was gonna sell it or give it away."

The prosecutor replied: (1) The juvenile court had already determined that the minor's conduct was a substantial factor in Moua's injury. (2) Once the prosecution had put on its witness, the minor had the burden of showing the claimed amount was unreasonable. (3) Although Moua did "pull that [$1,000] number out of the air," that estimate was "probably on the low end," given the undisputed facts that the car suffered extensive damage and had been inoperable since the accident.

After finding that the minor's liability for Moua's damages had been determined but that the amount of restitution was still open to dispute, the juvenile court ruled: "[T]here is enough evidence of more than a thousand dollars worth of damage, but without further documentation, that Mr. Moua's request for a thousand dollars restitution for a now inoperable car that was previously operable which he believed was valued at $3,000 with a list of property damage of a bumper, a hood, a frame, a radiator and lights, that a thousand dollars is a reasonable amount to request based on a preponderance of the

5

evidence standard in this case. [¶] And the Court does affirm the previous order of Judge De Alba, if there was any question as to whether it was ordered or not, for $1,000 restitution to Joe Moua. [¶] The Court will continue to retain jurisdiction on any additional damages suffered by Mr. Moua pursuant to Welfare and Institutions Code 60779 and 730.6(h)." The court then found that the minor had satisfactorily completed probation and that the restitution orders were converted to civil judgments by operation of law.

## DISCUSSION

The minor contends the juvenile court abused its discretion by awarding $1,000 in restitution to Moua because insufficient evidence supported the award. We disagree.

"It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs an economic loss as a result of the minor's conduct shall receive restitution directly from that minor." (§ 730.6, subd. (a)(1).)

"Upon a minor being found to be a person described in Section 602, . . . the court shall order the minor to pay . . . . [¶] . . . [¶] Restitution to the victim or victims, if any, in accordance with subdivision (h)." (§ 730.6, subd. (a)(2)(B).)

"Restitution ordered pursuant to subparagraph (B) of paragraph (2) of subdivision (a) shall be imposed in the amount of the losses, as determined. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. A minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order. A restitution order . . . shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602." (§ 730.6, subd. (h)(1).)

6

Once the victim has established the replacement or repair cost of his property, the minor bears the burden of proving that the amount of restitution claimed exceeds that cost. (*In re Travis J.* (2013) 222 Cal.App.4th 187, 204.) "A property owner's statements in the probation report about the value of [his or] her property should be accepted as prima facie evidence of value for purposes of restitution. (Cf. Evid. Code, § 810 et seq. [providing ' "special rules of evidence applicable to any action in which the value of property is to be ascertained" '].)" (*People v. Foster* (1993) 14 Cal.App.4th 939, 946-947; accord, *In re S. S.* (1995) 37 Cal.App.4th 543, 546-547 [juvenile delinquency proceeding]; *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.)

The juvenile court may use any rational method of determining the restitution amount, provided it is reasonably calculated to make the victim whole and is consistent with the purpose of rehabilitation. (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 853.) On review, we uphold a victim restitution order in a juvenile delinquency proceeding where there is a factual and rational basis for the order, and reverse only for abuse of discretion. (*Id.* at pp. 857-858.)

Here, the victim testified to a damage estimate of $1,000. This claim was based on a list of the specific parts of his car that incurred damage (not in the appellate record, but cited by the minor's counsel and the juvenile court), the undisputed fact that the car had been inoperable since the accident, and a $3,000 estimate derived from Craigslist of the car's value if sold for parts. The minor offered no evidence that the victim's estimate exceeded the replacement or repair cost of his car. The court found that in light of the undisputed evidence, the victim's estimate was not only reasonable, but low if anything. This was a rational method of determining the restitution amount based on the facts before the court, in particular the minor's failure to offer evidence to counter the victim's estimate. (*In re Alexander A.*, *supra*, 192 Cal.App.4th at p. 853; *In re Travis J.*, *supra*, 222 Cal.App.4th at p. 204.)

7

Relying chiefly on *People v. Vournazos* (1988) 198 Cal.App.3d 948, the minor argues that the burden never shifted to her to rebut the victim's estimate because documentation must be presented to establish repair or replacement value and the victim offered none. (Cf. *In re Travis J.*, *supra*, 222 Cal.App.4th at p. 204.) The minor is mistaken.

In *Vournazos*, the court reversed a restitution award so far as it was based only on the victim's undocumented estimate of value. (*People v. Vournazos*, *supra*, 198 Cal.App.3d at pp. 958-959.) But later case law, which the minor overlooks, has sharply criticized *Vournazos*'s reasoning.

In *Foster*, where the record contained no documentary evidence of the replacement value of the victim's lost property, the court reasoned: (1) The probation report gives the defendant notice of the recommended restitution amount, and the hearing gives him the chance to rebut that amount. (*People v. Foster*, *supra*, 14 Cal.App.4th at p. 946.) (2) Under Evidence Code section 810 et seq., a property owner's statements in the probation report about the value of property constitute prima facie evidence of its value for purposes of restitution. (*Foster*, at pp. 946-947.) (3) A hearing to establish the amount of restitution "does not require the formalities of other phases of a criminal prosecution." (*Id.* at p. 947.)[4]

In *In re S. S.*, the victim produced a written itemization of losses which was included in a probation report, but the minor's counsel argued that it was insufficient without proof by affidavit or declaration that the victim had actually incurred those losses. (*In re S. S.*, *supra*, 37 Cal.App.4th at pp. 545-546.) The juvenile court rejected this argument, noting that the minor and his counsel could have contacted the victim to

_____

[4]    The *Foster* court found *Vournazos* "unpersuasive" and rejected it on a point not directly raised in our case. (*People v. Foster*, *supra*, 14 Cal.App.4th at p. 946.) As we explain below, however, decisions following *Foster* have gone further in their criticism of *Vournazos*.

raise any disagreements or questions about the claimed losses.  (*Id.* at pp. 545-546.)  On appeal, the minor asserted, relying on *Vournazos*, that the victim had provided insufficient evidence of her losses.  (*In re S. S.*, at p. 546.)

The *In re S. S.* court questioned the reasoning and the result in *Vournazos.*  "The *Vournazos* court professed to acknowledge the rule, adopted in an earlier case, that the defendant 'bears the burden of proving that the amount of restitution claimed by the victim exceeds repair or replacement cost of lost or damaged property.'  (198 Cal.App.3d at p. 959, citing *People v. Hartley* (1984) 163 Cal.App.3d 126, 130 [209 Cal.Rptr. 131].)  In fact the *Hartley* decision stated an even broader rule:  ' "Since a defendant will learn of *the amount of restitution recommended* when he reviews the probation report prior to sentencing, the defendant bears the burden at the hearing of proving that amount exceeds the replacement or repair cost." '  (163 Cal.App.3d at p. 130, italics added, fn. omitted.)  . . . [T]he decision appears to mean that, at least where the items, amounts, and sources are adequately identified in or with the probation report, the defendant has the burden of refuting them."  (*In re S. S.*, *supra*, 37 Cal.App.4th at p. 546.)

"We find it difficult to reconcile the holding in *Vournazos* with the rule just cited.  We are not alone in that difficulty.  In *People v. Foster* . . . the only court to squarely consider the holding of *Vournazos* refused to follow it. . . .  The court found *Vournazos* 'unpersuasive,' partly because it 'imposes an unwarranted burden on the trial court, the prosecutor, and the victim.'  [Citation.]  Instead, the court concluded an item's original cost can generally be treated as evidence of replacement cost for purposes of restitution.  (*Ibid.*)  Moreover, a property owner's statements of value, recapitulated in the probation report, 'should be accepted as prima facie evidence of value.'  (*Ibid.*)  'When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount.' "  (*In re S. S.*, *supra*, 37 Cal.App.4th at pp. 546-547.)

9

Lastly, in *Gemelli*, the court held: "[T]o the extent *Vournazos* might be read to require more than a victim's statement of loss and a probation officer's recommendation as prima facie evidence of value to determine an appropriate amount of restitution, we decline to follow it for the policy reasons set forth in *Foster, supra*, 14 Cal.App.4th 939." (*People v. Gemelli*, *supra*, 161 Cal.App.4th at p. 1543.)

Believing the above line of cases to be correctly decided, we also reject *Vournazos* to the extent it holds a victim must present documentation to support the claimed amount of loss before a defendant (or a minor in a delinquency proceeding) is required to produce contrary evidence. The victim's estimate, supported by his itemization of the specific damages inflicted on his property, was sufficient to make a prima facia case of the amount of his loss and to shift the burden to the minor to rebut it with evidence. The minor presented none. Thus, the prosecution's claim for restitution in the amount of $1,000 was unrebutted, and the juvenile court could reasonably rely on it.

DISPOSITION

The restitution award of $1,000 to victim Moua is affirmed.

/s/
Robie, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Nicholson, J.

10